[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION
There are several motions pending including disputes over custody, payments of expenses, support, counsel fees and contempt. They are generally inter-related and after an evidentiary hearing in which both parties were represented by counsel, the Court enters findings and orders as follows:
The parties intermarried in 1978. Mrs. D'Angelo had a child, CT Page 42 Joel, from a prior marriage. Joel who was born on March 2, 1977 was adopted by Mr. D'Angelo. A second son, Ryan, was born on September 10, 1981.
In 1985 their marriage was dissolved. The judgment provided for joint custody of both children, primary residence to be with the mother and visitation for the father.
In April, 1985, Mrs. D'Angelo took the minor children and fled the state. In 1989, primarily to facilitate the return of the children if and when they were located, this Court granted sole custody of both boys to the father. Mr. D'Angelo's persistent efforts in trying to locate the boys were successful in 1991 when they were located in Tacoma, Washington. After a hearing in Washington the boys were turned over to Mr. D'Angelo and he returned them to Connecticut in May 1991. Mrs. D'Angelo followed shortly thereafter and the matters of custody and visitation have been in dispute since. An attorney was appointed for the children. A study was done by the Family Relations office and by Dr. James Black, a psychiatrist qualified as an expert in the field of child and adult psychiatry.
The Court heard the testimony of Joel, now sixteen years of age, Mr. D'Angelo, Mrs. D'Angelo, the Family Relations officer, Dr. Black, Clifford Johnson (the Director of the Connecticut Child Guidance Clinic who is an expert in child-parent relationships), Janet Romayko, a clinical social worker expert in the field of sexual abuse, and the recommendations of the attorney for the children.
Mrs. D'Angelo seeks sole custody of Joel, joint custody of Ryan and unsupervised visitation with Ryan. Additional facts are relevant to these issues. Mr. D'Angelo, while recognizing that since Joel is almost seventeen years old, he cannot be forced to reside with his father, seeks at least joint custody in order to maintain his parental involvement with Joel.
This Court is convinced that shared custody is not a feasible alternative in this case. The parties do not trust each other, do not communicate with each other without rancor and hostility, and have demonstrated a willingness to disparage each other to the children. They are not capable of jointly making decisions on matters concerning the care and development of the children. Their mutual bitterness toward each other would override any objective consideration of the children's best interests and serve only to CT Page 43 create more disharmony. The Court concludes that joint custody is not in the best interests of the children.
Although Mr. D'Angelo presently has sole custody of Joel, Joel has been in fact living with his mother since April 1992. He does not get along with his father, and made the choice to move back with Mrs. D'Angelo. He visits his father on his own terms and will probably continue to do so.
The prior orders as they concern custody are modified and custody of Joel is awarded solely to the plaintiff mother with reasonable visitation to the defendant father.
For the same reason custody of Ryan is awarded solely to the father with reasonable visitation to the mother, which shall include at least three hours each week on alternating Saturdays and Sundays (from 1:00 P.M. to 4:00 P.M. unless the parties agree otherwise). These visits shall be unsupervised.
While Mrs. D'Angelo's unjustified flight from Connecticut was improper and inexcusable, (her explanation that Mr. D'Angelo was sexually abusing the boys was and is uncorroborated by any evidence and neither boy has made such a charge to any treating doctor or in court testimony), Mrs. D'Angelo has had an order of supervised visitation for longer than two years and the experience of that two year period is that supervisors are difficult to find, Mrs. D'Angelo has a limited income and can ill-afford to pay the costs which are now as much as $35.00 per hour. Her visits have been severely limited and that situation has negatively affected Ryan who does want to see his mother. The defendant's concerns about flight are not without reason, but Mrs. D'Angelo did have opportunity in the past (since mid-1991) to flee with the children and has not done so. And, as further deterrent, Mr. D'Angelo will have sole custody of Ryan. It is the Court's hope that, if this visitation schedule is beneficial to Ryan, it can be expanded in the future to foster the relationship that Ryan should have with his mother.
Neither parent shall remove either child from the state of Connecticut for the purpose of changing residence to another state without notifying the other parent, in writing within 60 days prior to moving.
If either parent leaves the state of Connecticut for a period in excess of three days with the child in his or her custody for a CT Page 44 temporary purpose such as vacation, that parent shall notify the other parent prior to 10 days of such event and provide a means of contact, e.g., a telephone number in the out of state location.
Other orders are entered as follows:
Both parties shall provide health or medical insurance as may be available through their employment for their minor children. The provisions of Connecticut General Statutes 46b-84c shall apply. The parties shall share equally the costs of unreimbursed medical expenses and if either party does not carry such health insurance he or she shall pay one half of the costs to insure, if there be any.
Neither party shall pay child support to the other.
The plaintiff shall claim Joel as a dependant for tax purposes and the defendant shall claim Ryan.
The defendant's Motion for Contempt dated January 14, 1993 is denied since Dr. Black's report was available to the Court, and the plaintiff has made arrangements to pay her share of Dr. Black's bill.
The defendant has moved for payment of his expenses in locating the children and counsel fees (Motion for Order of Payment of Counsel Fees and Costs, dated November 16, 1993). The fact is that the plaintiff does not have the financial resources to pay these costs if awarded. She is represented by the Legal Aid Office, and works as a waitress with a net weekly income of approximately $210.00. She is supporting her sixteen year old son as well as herself. She owns no real property, and has no savings or investments. The Court finds she has no ability to pay and the motion is denied.
The defendant's Motion for Contempt and Order of Payment, also dated November 19, 1993 is denied without prejudice, however the plaintiff shall pay her share of any previously ordered medical expenses and shall make arrangement with any care provider to do so. She shall hold the defendant harmless for any such obligation.
The plaintiff shall be solely responsible for the costs of Dr. Black's courtroom testimony as that was the plaintiff's option. She shall make arrangements to pay said bill and hold the defendant harmless therefrom. CT Page 45
The parties shall share equally the legal fees of counsel for the minor children, and shall make arrangements for payment satisfactory to said attorney within 14 days of this decision.
Klaczak, J.